UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RYAN E. CROWDUS, )
)
Plaintiff, )
)
vs. )
) No. 1:13-cv-494-TAB-JMS
CAROLYN W. COLVIN Commissioner of the )
Social Security Administration, )
)
Defendant. )

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I. Introduction**

Plaintiff Ryan E. Crowdus appeals the Administrative Law Judge's denial of his Social Security application for a period of disability, disability insurance benefits, and supplemental security income. Crowdus's alleged impairments include degenerative disc disease, asthma, and obesity. [Filing No. 13-2, at ECF p. 12.] Crowdus appeals arguing (1) the ALJ erred in finding no disability due to chronic back and leg pain; (2) the ALJ erred in failing to summon a medical advisor; (3) the ALJ erred in her credibility determination; and (4) the ALJ erred in finding Crowdus capable of performing work in the national economy. For the reasons set forth below, Crowdus's brief in support of appeal [Filing No. 13-2] is denied and the Commissioner's decision is affirmed.

**II. Discussion**

*A. Standard of review*

The Social Security regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled: whether the plaintiff (1) is currently unemployed, (2) has a severe

impairment, (3) has an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations, (4) is unable to perform her past relevant work, and (5) is unable to perform any other work in the national economy. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512–13 (7th Cir. 2009). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985)). "A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Id.*

The Court must uphold the ALJ's decision if substantial evidence supports his findings. *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013). "Although a mere scintilla of proof will not suffice to uphold an ALJ's findings, the substantial evidence standard requires no more than such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The ALJ is obligated to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). If evidence contradicts the ALJ's conclusions, the ALJ must confront that evidence and explain why it was rejected. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ, however, need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion. *Pepper*, 712 F.3d at 362.

B.  *Disability finding*

Crowdus contends that the ALJ erred in finding no disability due to chronic back and leg pain. Crowdus argues that the ALJ based his decision on his own layperson opinion, selectively considering or ignoring evidence in the record. By doing so, Crowdus claims that the ALJ failed

to build an accurate and logical bridge from the evidence to his conclusion. [Filing No. 17, at ECF p. 8.] In response, the Commissioner argues that substantial evidence supports the ALJ's finding.

Substantial evidence supports the ALJ's finding that Crowdus is not disabled due to chronic back and leg pain. The ALJ's decision discussed over a year of examinations. The ALJ examined Crowdus's complaints of low back pain radiating into his right leg. The ALJ noted an April 2010 examination that revealed marked tenderness to palpation throughout Crowdus's paralumbar musculature. He also mentioned a May 2010 report that Crowdus walked with a limp, used a cane for balance and support, and had marked tenderness. X-rays revealed mild problems with the lumbar spine extending to the nerve root canal. However, the same report found no focal motor or sensory deficits and a normal gait. Crowdus also had no extremity weakness. [Filing No. 13-2, at ECF p. 14.]

The ALJ's decision considered a motor examination in June 2010 where Dr. John Garanschelli found Crowdus restricted in forward bending to about 60 degrees and bilateral hamstring tightness. But in that same exam, Dr. Garanschelli found good symmetrical and equal strength in the hip, knee, and ankle flexors and the corresponding extensors. [Filing No. 13-2, at ECF p. 15.] Dr. Garanschelli also reported good sensation in the lower extremities with no evidence of a clear-cut neurologic dysfunction, and no evidence of fracture or surgically significant disc herniation requiring surgery. [Filing No. 13-7 at ECF p. 12.] The ALJ's decision reported that a chiropractor recommended neurosurgery in September 2010. But the ALJ also noted a July 2011 examination where Crowdus had no difficulty walking or gait unsteadiness with possible limitation by pain of the right dorsiflexion. By an October 2011 emergency room visit, Crowdus appeared to be able to walk around the room without difficulty

3

and had a normal gait with 5/5 strength in all four extremities. Ultimately, the ALJ concluded that Crowdus's pain symptoms were not consistent with the medical evidence. The ALJ provided detailed evidence to support his finding that Crowdus had no disability due to chronic leg and back pain. Thus, the ALJ did not err.

According to Crowdus, the ALJ also erred in his consideration of a July 6, 2011, evaluation by treating neurosurgeon Dr. Scott Shaprio. Crowdus asserts that the ALJ ignored findings of radicular paresthesias and numbness in his right foot related to back pain. [Filing No. 17, at ECF p. 8.] The Court disagrees. At the July 6 evaluation Dr. Shapiro found Crowdus's lower extremities to be 5/5 throughout with right hip flexion and knee extension and possible pain limitation in the right dorsiflexion. Crowdus described his symptoms to Dr. Shapiro as a shooting pain descending his right leg and the presence of a positive straight leg raise. [Filing No. 13-8, at ECF p. 29.] The ALJ discussed Shapiro's findings in his decision, specifically noting Crowdus's examination results and that, other than his gait being antalgic, Crowdus had no difficulty walking or an unsteady gait. [Filing No. 13-2, at ECF p. 16.] While the ALJ's decision does not mention Crowdus's numbness and radiating pain as described in the July 6 evaluation, the ALJ discussed similar numbness and pain from an April 2011 examination. [Filing No. 13-2, at ECF p. 15.]

Crowdus also argues that the ALJ ignored an MRI showing some impingement on the right L5 nerve root, which contradicts the ALJ's finding of no evidence of nerve root compression. However, Dr. Shapiro reported that the MRI "reveals a right L5-S1 far lateral disc bulge, possibly with some impingement on the right L5 nerve root." [Filing No. 13-8, at ECF p. 29.] A finding of possibly some impingement does not conclusively determine nerve root compression. However, it is evidence of some type of nerve root problem. The ALJ failed to

acknowledge evidence of a possible nerve root compression. Thus, the ALJ's finding is not entirely correct. But this alone does not require remand. *See Jones v. Astrue,* No. 2:12-CV-00143, 2013 WL 816170, at *13 (N.D. Ind. 2013) ("[t]he Seventh Circuit has also recognized that an ALJ's reasoning need not be perfect"). The ALJ provides adequate evidence to support his conclusion of no disability. Accordingly, remand on this issue is not appropriate.

    C.  *Summoning a medical advisor*

Crowdus next argues that the ALJ erroneously failed to summon a medical advisor, basing his decision on his layperson opinion and not on the medical evidence. According to Crowdus, the ALJ erred in relying on state agency physicians' opinions as these physicians did not review the record on a whole. These physicians did not consider an April 25, 2011, neurosurgery evaluation; a July 6, 2011, neurosurgery evaluation; or an October 18, 2011, residual functional capacity assessment. [Filing No. 17, at ECF p. 10.] Moreover, Crowdus asserts that the ALJ failed to cite to any evidence that supports his finding that Crowdus's combined impairments did not medically equal any listing. The Commissioner argues that the ALJ acted within his discretion and adequate evidence was available to support his findings. [Filing No. 24, at ECF p. 6.] The Commissioner further contends that the medical evidence gathered subsequent to the state agency physicians' assessments would not change the outcome of the ALJ's finding.

The decision to summon a medical advisor is within the ALJ's discretion. An ALJ is only required to summon a medical advisor if it is necessary to provide an informed basis for determining whether the claimant is disabled. *Clifford v. Apfel*, 227 F.3d 863, 873 (7th Cir. 2000). The ALJ does not err in failing to summon a medical advisor when there is no showing that the ALJ disregarded relevant medical evidence contrary to his conclusions or failed to

5

adequately explain how he reached his decisions. *Thomas v. Astrue*, No. 1:09-cv-808-SEB-JMS, 2010 WL 2485556, at *5 (S.D. Ind. June 11, 2010). Here, the ALJ had sufficient information in the record to make a disability determination without summoning a medical advisor. Medical evidence supports the ALJ's finding that Crowdus had a normal gait and no difficulty in walking. Although Crowdus consistently reported pain descending his right leg, examinations show equal strength in his extremities and only mild degenerative changes.

Crowdus asserts that the ALJ failed to consider evaluations dated April 25, 2011, July 6, 2011, and October 18, 2011. However, the ALJ discussed the findings from the April 25, 2011, examination and the July 6, 2011, evaluation. [Filing No. 13-2, at ECF p. 15-16.] The ALJ discredited the October 18, 2011, RFC assessment by Crowdus's treating physician. Crowdus's treating physician reported that Crowdus could only sit, stand, or walk for up to one hour. The ALJ, however, found this report to be inconsistent with the overall medical evidence. [Filing No. 13-2, at ECF p. 17.] Still, he did not solely rely on the RFC finding of the state agency physicians and provided a more restrictive RFC determination. The ALJ properly considered the evidence postdating the state agency assessments, and substantial evidence supports the ALJ's decision not to seek additional medical opinions.

### D. *Credibility determination*

Crowdus argues that the ALJ's credibility determination is erroneous because it is contrary to Social Security Ruling 96-7p, uses boilerplate language, and is irrational. [Filing No. 17, at ECF p. 14.] The ALJ allegedly rejected Crowdus's statements describing his total disability and failed to explain "why all of the objective medical evidence did not support [Crowdus's] complaints of disabling pain." [Filing No. 17, at ECF p. 15.] The Commissioner responds that the ALJ provided objective medical evidence to support his findings. Moreover,

the Commissioner asserts that the ALJ considered Crowdus's subjective complaints and provided an extensive discussion of the evidence under Social Security Ruling 96-7p.

The Court will overturn an ALJ's credibility determination if it is patently wrong. [Getch v. Astrue, 539 F.3d 473, 483 (7th Cir. 2008)](). Pursuant to Social Security 96-7p, the ALJ assessed Crowdus's allegations of pain along with the objective medical evidence. The ALJ found that Crowdus's subjective complaints and alleged limitations were not fully persuasive. Instead, he found Crowdus could perform limited work. In making this determination, the ALJ considered several reports of tenderness and pain shooting down Crowdus's leg. However, several reports indicated Crowdus's gait was normal, he had no difficulty walking and, though he used a cane, there was no evidence that he needed a cane for standing. The ALJ relied on evidence showing mild degenerative changes, including mild generalized bulges, mild facet arthrosis, and mild foraminal stenosis. [[Filing No. 13-2, at ECF p. 14]().] Medical evidence reported no extremity weakness, as well as good symmetrical and equal strength. [[Filing No. 13-2, at ECF p. 15]().]

The ALJ considered Crowdus's daily activities in his credibility determination. The ALJ found that Crowdus's description of being fairly limited in his daily activities contradicted Crowdus's testimony that he was able to cook, clean, shop, and regularly attend church. [[Filing No. 13-2, at ECF p.16]().] The ALJ also noted that Crowdus has no problems with personal care, can function independently, and can take care of his own basic needs. Thus, the ALJ concluded that Crowdus was not as limited as he alleged. Substantial evidence supports the ALJ's credibility determination and his finding is not patently wrong.

### E. Jobs in the national economy

Crowdus also claims that the ALJ erred in finding that he can perform work as a cafeteria cashier, survey worker clerk, and reservation sales clerk. He argues that the ALJ and vocational expert relied on a flawed RFC determination, and did not properly consider Crowdus's subjective complaints of pain. [Filing No. 17, at ECF p. 17.] The Commissioner argues that substantial evidence supports the ALJ's RFC determination. The Commissioner notes that the ALJ's determination was more restrictive than that of state agency physician Dr. Dawson, even though Dr. Dawson's opinion was most consistent with the evidence as a whole.

The ALJ found that Crowdus can sit, stand, and walk up to thirty minutes at one time and four hours during an eight-hour workday with the use of a cane for walking. The ALJ determined that Crowdus is capable of lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently, but no operation of foot pedals or controls. The ALJ found Crowdus capable of occasionally climbing ramps and stairs. He also is capable of balancing, stooping, kneeling, crouching, and crawling, but is not able to climb ladders, ropes, or scaffolds or work around dangerous moving machinery or at unprotected heights. The ALJ's RFC determination limits Crowdus to moderate exposure to extreme heat, cold, wetness, humidity, dust, fumes, gases, or other respiratory irritants. [Filing No. 13-2, at ECF p. 14.]

In making the ALJ's RFC determination, the ALJ discussed objective medical evidence concerning Crowdus's back, asthma, and obesity. He discussed Crowdus's chronic back and leg pain, specifically Crowdus's tenderness along the lumbar spine, radiating pain down his right leg, and numbness. But the ALJ noted that Crowdus has no difficulty walking, a normal gait, and strong symmetrical extremities. [Filing No. 13-2, at ECF p. 15; Filing No. 13-2, at ECF p. 16.] The ALJ also considered MRI reports of mild degenerative changes and only slightly

diminished reflexes.  Regarding Crowdus's asthma, the ALJ considered evidence showing clear lungs, equal breath, no wheezing, and normal respiratory excursions.  [Filing No. 13-2, at ECF p. 16.]  The ALJ assessed Crowdus's obesity and determined that due to his musculosketal pain, respiratory impairments, and obesity, it was appropriate to limit or preclude work that required ambulation or exertion above the light level.  Moreover, the ALJ reviewed Crowdus's subjective complaints, ultimately finding the complaints unpersuasive because they were unfounded in the record and contradicted evidence showing Crowdus lived independently.  The ALJ mentioned that Crowdus had to cancel a physical therapy session because he was unable to drive due to pain in his right leg, but Crowdus testified at the hearing he had no difficulty driving.  [Filing No. 13-2, at ECF p. 17.]  Accordingly, the ALJ provided substantial evidence to support the RFC determination.

The ALJ's hypothetical questions accounted for Crowdus's capabilities.  The ALJ's hypothetical questions considered an individual who can sit, stand, and walk thirty minutes at a time, four hours during an eight-hour workday.  The ALJ's hypothetical to the VE accounted for Crowdus's limitations to extreme weather exposure along with his other limitations.  [Filing No. 13-2, at ECF p. 43.]  Moreover, the ALJ questioned the VE on jobs available for an individual requiring the use of a cane.  [Filing No. 13-2 at ECF p. 44.]  The ALJ's hypothetical questions appropriately considered the RFC determination.  Thus, the ALJ did not err in relying on the VE's findings that jobs in the national economy existed for individuals with Crowdus's capabilities.

**IV. Conclusion**

The ALJ provided substantial evidence to support his finding of no disability, his credibility determination, and his RFC finding.  He did not err in failing to summon a medical

advisor and addressed Crowdus's specific work capabilites in his hypothetical questions to the VE. For these reasons, Crowdus's brief in support of appeal [Filing No. 17] is denied and the Commissioner's decision is affirmed.

Date: _____

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov